ESTATE OF AUDRY J. WHITT, LOYD WHITT AND WILLARD WHITT, ADMINISTRATORS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE Respondent Estate of Whitt v. Commissioner
Docket Nos. 13388-78, 13389-78, 5422-79.
United States Tax Court
T.C. Memo 1983-262; 1983 Tax Ct. Memo LEXIS 526; 46 T.C.M. (CCH) 118; T.C.M. (RIA) 83262; May 12, 1983. *526 Decedent Elbert B. Whitt owned 18 tracts of real property at some point during his lifetime. Held: Tract Nos. 2, 3, 4, 5, 8, 9, 10, 11, 14, 15, and 17 are includable in the Estate of Elbert B. Whitt (docket No. 13389-78) under section 2033. Held further: Completed gifts of Tract Nos. 1, 6, 7, 12, 13 and 16 were made in the years the deeds were recorded. Held further: Tract No. 18 was sold in 1952. Held further: Respondent's determination of the fair market value of Tract Nos. 1, 6, 7, 12, 13, and 16 sustained. Held further: Petitioner Estate of Elbert B. Whitt (docket No. 5422-79) is not entitled to a specific gift tax exemption under section 2521 for deceased spouse. Held further: Estate of Elbert B. Whitt (docket No. 5422-79) is liable for additions to tax under sections 6651(a)(1) and 6653(a). Held further: Respondent's determination of the fair market value of real property includable in the Estate of Audry J. Whitt (docket No. 13388-78) sustained. Held further: Attorney fees incurred by petitioner Estate of Elbert B. Whitt (docket No. 13389-78) and petitioner Estate of Audry J. Whitt (docket No. 13388-78) are deductible as administration expenses under section 2053(a)(2). *527 Held further: Farm equipment and cattle in amounts determined by respondent were owned by Elbert B. Whitt as of the date of his death (docket No. 13389-78). Held further: Petitioners Estate of Elbert B. Whitt (docket No. 13389-78) and Estate of Audry J. Whitt (docket No. 13388-78) are not liable for the addition to tax for fraud under section 6653(b) but are liable for the addition to tax for late filing under section 6651(a)(1) J. Gilmer Blackburn, for the petitioners. Frank Simmons, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in Federal estate and gift tax and additions to tax against petitioners as follows: Date of
Addition
Petitioners
Docket No.
Death
Deficiency
to Tax
Estate of Audry
Sec. 6653(b) [3]
J. Whitt, Loyd
[2] *528 13388-78
2/26/70
$19,864.62
$21,966.31
Whitt and Willard
Whitt, Administrators
Estate of Elbert
Sec. 6653(b)
B. Whitt, Loyd
13389-78
6/14/69
$154,437.76
$99,627.88
Whitt, Executor
Estate of Elbert
Sec. 6651(a)
B. Whitt, Loyd
5422-79
1963
8,934.39
2,233.60
Whitt, Executor
Sec. 6653(a)
446.72
Sec. 6651(a)
1964
33,826.37
8,456.59
Sec. 6653(a)
1,691.32
After concessions by petitioners and respondent, the issues remaining for our consideration are as follows: [4]
Docket No. 13389-78 (Estate Taxes)
1. Whether Elbert B. Whitt effectively transferred *529 18 parcels of real property [5] during his lifetime so as to preclude their inclusion in his gross estate or, in the alternative, whether Elbert B. Whitt retained the use and possession of, or the right to the 18 parcels of real property, the ownership of which he had otherwise transferred during his lifetime, for a period that did not end prior to his death. 2. Whether Elbert B. Whitt owned at the time of his death, or during his lifetime retained the use and possession of farm equipment with a value of $8,495 [6] *530 and cattle with a value of $9,003.41, the ownership of which he had otherwise transferred, for a period that did not end with his death. 3. Whether any part of the underpayment of estate taxes of the Estate of Elbert B. Whitt was due to fraud or, in the alternative, whether the Estate is subject to the addition to tax for failure to file an estate tax return under section 6651(a)(1). 4. Whether the Estate of Elbert B. Whitt is entitled to a deduction for attorney fees incurred in connection with the criminal investigation into the failure of Loyd Whitt, as executor, to file the estate tax return. Docket No. 5422-79 (Gift Taxes)
5. Whether (as an alternative to respondent's position that Elbert B. Whitt did not effectively transfer during his lifetime 18 parcels of real property so as to preclude their inclusion in his gross estate) Elbert B. Whitt transferred during his lifetime real property or interests therein without full and adequate consideration to his children and the heir of his deceased child, which gifts were completed during 1963 and 1964. 6. Whether the value of the gifts completed during 1963 and 1964 was $77,616.61 and $170,431.67, respectively, as determined by the Commissioner. 7. Whether the Estate of Elbert B. Whitt is entitled to the $30,000 lifetime specific gift tax exemption *531 as provided by section 2521 for the wife of the decedent. 8. Whether the Estate of Elbert B. Whitt is subject to the addition to tax for failure to file gift tax returns for 1963 and 1964 under section 6651(a)(1). 9. Whether the underpayments of gift tax for 1963 and 1964 were due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Docket No. 13388-78 (Estate Taxes)
10. Whether the Estate of Audry J. Whitt understated the value of certain real property owned by the decedent at the time of his death by $21,900. 11. Whether the Estate of Audry J. Whitt is entitled to a deduction for attorney fees incurred in connection with the criminal failure to file charges brought against the co-administrators of the estate. 12. Whether any part of the underpayment of estate taxes of the Estate of Audry J. Whitt was due to fraud or, in the alternative, whether the Estate is subject to the addition to tax for failure to file an estate tax return under section 6651(a)(1). [7] *532 *533 FINDINGS OF FACT -- ELBERT B. WHITT Elbert B. Whitt, a resident of Ardmore, Limestone County, Alabama, died on June 14, *534 1969, at the age of 82. His Will was probated in the Probate Court of Limestone County and his son, Loyd Whitt, who resides in Limestone County, was appointed executor of the Estate. The Estate of Elbert B. Whitt is the petitioner in docket Nos. 13389-78 and 5422-79. A Federal estate tax return for the Estate of Elbert B. Whitt was filed on September 16, 1975, with the Internal Revenue Service Center in Chamblee, Georgia. [8] Elbert Whitt did not file Federal gift tax returns for the years 1963 and 1964. At the time of his death in 1969, Elbert B. Whitt was a widower. His wife, Nellie Myrtle Whitt, died in June of 1966. Elbert had suffered a stroke in December 1968 but recovered to some extent prior to his death 6 months later. Mr. Whitt had six surviving children as of the date of his death: Willard Whitt, Alton Whitt, Mary Whitt Richardson, *535 Audry J. Whitt, Mahlon Whitt and Loyd Whitt. Another son, Thomas Melvin Whitt, predeceased Elbert B. Whitt and left one surviving child, Margaret Ann Whitt The following schedule represents joint bank accounts and certificates of deposit, including accrued interest, of Elbert B. Whitt as reported on his estate tax return, and as agreed by the parties that he owned at the time of his death: Second Name
As
Agreed
on Account
Reported
Amount
First Federal Savings & Loan
of Decatur, C.D. #7349
Loyd
$10,000.00
$10,000.00
First Federal Savings & Loan
of Decatur, C.D. #7074
10,000.00
10,000.00
First Federal Savings & Loan
of Decatur, C.D. $7806
Audry
10,000.00
10,000.00
First Federal Savings & Loan
of Decatur, C.D. #7072
Loyd
10,000.00
10,000.00
First Federal Savings & Loan
of Decatur, C.D. #7073
Ann
10,000.00
10,000.00
First National Bank, Ardmore,
Tennessee, C.D. #1532
Mahlon
3,900.00
3,900.00
First National Bank, Ardmore,
Tennessee, C.D. #1531
Ann
10,000.00
10,000.00
Security Federal Savings,
Huntsville, AL, C.D. #788
Mary
10,153.00
10,153.00
Security Federal Savings
Huntsville, AL, C.D. #214
Alton
$10,125.00
$10,125.00
First Federal Savings & Loan
of Huntsville, C.D. #B-325
Alton
10,000.00
10,000.00
First Federal Savings & Loan
of Huntsville, C.D. #B-326
Audry
10,000.00
10,000.00
First Federal Savings & Loan
of Huntsville, C.D. #B-327
Mary
10,000.00
10,000.00
First Federal Savings & Loan
of Huntsville, C.D. #B-328
Willard
10,000.00
10,000.00
First Federal Savings & Loan
of Huntsville, C.D. #B-329
Mahlon
10,000.00
10,000.00
First Federal Savings & Loan
of Huntsville, C.D. #B-704
Willard
10,000.00
10,000.00
First National Bank of Pulaski,
Tennessee, Passbook Savings
Acount
Alton
10,000.00
10,000.00
State National Central Bank
of Alabama, C.D. #511
Audry
10,000.00
10,000.00
State National Central Bank
of Alabama, C.D. #510
Mahlon
10,000.00
10,000.00
State National Bank of
Alabama, C.D. #193
Loyd
3,716.00
1,858.00
State National Bank of
Alabama, C.D. #194
Loyd
6,283.00
3,141.50
State National Bank of
Alabama, C.D. #541
Ann
10,000.00
10,000.00
C.D. #1687
15,762.00
15,762.00
First National Bank of Pulaski,
Ardmore, Alabama, Branch
12,159.00
7,350.04
First Federal Savings & Loan
of Decatur, C.D. # 57804
0
10,000.00
Accrued Interest on Bank Accounts
0
2,298.74
Totals
$222,098.00
$224,588.28
*536 After the death of Elbert B. Whitt, Catherine Riethmaier, the mother and legal guardian of Margaret Ann Whitt, granddaughter of Elbert B. Whitt, received three certificates of deposit in the amount of $10,000 each, issued in the names of "Elbert B. Whitt and/or Ann Whitt." She also received on Ann's behalf $400 in interest which had accrued on one of the certificates of deposit during 1969.
The following schedule represents the notes receivable, including accrued interest, of Elbert B. Whitt as reported on his estate tax return, and as agreed by the parties that he owned at the time of his death: As
Agreed
Debtor
Reported
Amount
Ronald H. Malone
$10,000.00
$10,000.00
Ben L. McCown
9,000.00
9,000.00
Paul Butler
3,450.00
3,450.00
Bobby Brock
2,350.00
2,350.00
Walter Brooks
1,500.00
2,500.00
Mrs. Willie Jones Mitchell
600.00
600.00
Floyd Vinning
400.00
400.00
Maurice G. Brackeen
0
2,000.00
Gary T. Hargrove
0
9,500.00
Herman Eaves
0
4,700.00
Rudolph Lewter
0
3,000.00
James Young
0
10,000.00
$27,300.00
$57,500.00
Accrued interest on
above notes
1,638.00
1,725.00
Total
$28,938.00
$59,225.00
Maurice G. Brackeen of Elkmont, Alabama, borrowed $5,000 from Elbert Whitt in December of 1960 at 6-percent interest. As of the date of Elbert Whitt's *537 death he still owed $2,000 on this loan. Mr. Brackeen repaid the loan in full including accrued interest of $120 on July 18, 1969, by check to Loyd Whitt. On January 2, 1969, Elbert Whitt executed his Will and gave a power of attorney to his son Loyd. Loyd Whitt lived approximately 300 yards from his father, saw his father daily and often discussed business with him. Loyd had a high school education. Elbert Whitt filed Federal income tax returns for each of the years 1967, 1968 and 1969. On his 1967 and 1968 returns Elbert Whitt reported interest income of $4,290 and $5,376.30, respectively, and farm losses of $3,259.17 and $1,040.06, computed as follows: 1967
1968
Income
Cattle
$1,753.30
$1,064.61
Swine
340.00
363.30
Cotton
2,140.30
Agricultural
Program Payments
5,100.60
4,883.93
Total Income
$7,193.90
$8,452.14
Expenses
Labor
$1,262.30
$ 640.00
Seed
562.00
667.80
Fertilizer
2,482.60
1,580.50
Machine Hire
150.00
480.00
Supplies
760.57
667.80
Gasoline
1,240.30
850.90
Repairs
680.30
430.20
Taxes
478.00
478.00
$7,616.07
$5,795.20
Date
Depreciation
Depreciation
Put Into
Useful
Claimed
Item
Basis
Service
Life
1967
1968
Massey Ferguson
Tractor
$6,100
1968
10
$0
$ 610.00
Tenant House
5,000
1968
20
0
250.00
J. S. Tractor & Equip.
4,000
3/59
10
400.00
400.00
Ford Tractor & Equip.
4,250
1961
10
425.00
425.00
Hay Baler
1,550
1961
10
155.00
155.00
Mowing Machine
595
1963
10
59.50
59.50
Bush Hog
450
1960
10
45.00
45.00
Manure Spreader
590
1963
10
59.00
59.00
Wagon
275
1962
10
27.50
27.50
Trailer
$ 100
1960
10
$ 10.00
$ 10.00
International Truck
3,900
1966
6
650.00
650.00
Ford Corn Picker
1,260
1966
6
210.00
210.00
Elevator
360
1966
10
36.00
36.00
Four Wheel Wagon
160
1966
10
16.00
16.00
New Barn
1,500
1966
20
75.00
75.00
New Barn
1,500
1966
20
75.00
75.00
GMC Truck
2,375
1967
4
594.00
594.00
Total Depreciation
$2,837.00
$3,697.00
1967
1968
Farm Income
$ 7,193.90 $ 8,452.14 Farm Expenses
(7,616.07)
(5,795.20)
Depreciation
(2,837.00)
(3,697.00)
Total Farm Loss
$ (3,259.17)
$ (1,040.06)
Elbert *538 Whitt incurred no income tax liability for his 1967 taxable year. On April 12, 1969, Willard Whitt wrote a check to the Internal Revenue Service for $475 in payment of Elbert Whitt's income taxes for 1968. Willard Whitt signed this check "Elbert Whitt by W. Whitt." Elbert Whitt's 1969 income tax return is signed "Elbert Whitt by Willard Whitt." Immediately below the signature line appears the typed statement "Filed by Willard Whitt, General Delivery, Ardmore, Tenn. 38449 Son of Deceased (June 14, 1969) -- No administration." The only reported income on Elbert Whitt's 1969 income tax return is $4,058 listed on an attached Schedule E as "Land rented to Gov. ASCS Program." According to his income tax returns for 1967 and 1968 Elbert Whitt sold cattle during both of those years. In February and March of 1969, three cattle buying organizations (the Farmers Auction Company, Tennessee Producers Livestock Marketing Association, and Limestone County Stock Yard) made payments by check to Elbert B. Whitt in the respective amounts of $809.85, $374.30 and $259.67. In May of 1969, Richland Mills issued a check to Elbert Whitt in the amount of $315.97. Each of these checks is endorsed in the *539 name of Elbert B. Whitt. On July 3, 1969, Farmers Auction Company issued two checks both in the joint names of Loyd and Willard Whitt in the amounts of $5,187.14 and $3,816.27. The following schedule represents certain farm equipment which is reported in the depreciation schedules on Elbert B. Whitt's 1967 and 1968 income tax returns and which the parties have agreed is includible in his gross estate: As
Agreed
Reported
Amount
Ford Tractor
0
$ 425.00
Hay Baler
0
155.00
Mowing Machine
0
178.00
Massey Ferguson Tractor
0
4,880.00
GMC Truck
0
593.00
Manure Spreader
0
177.00
Wagon
0
55.00
International Truck
0
1,300.00
Ford Corn Picker
0
420.00
Elevator
0
216.00
Four Wheel Wagon
0
96.00
Totals
0
$8,495.00
The following tracts of land were owned at some period of time by Elbert Whitt: Year
Date of
Deed
Stated
Tract No.
Deed
Recorded
Grantee
1
8/21/59
1964
Alton Whitt
2
8/21/59
1964
Audry Whitt
3
8/21/59
1964
Audry Whitt
4
8/21/59
1964
Audry Whitt
5
Audry Whitt
6
8/21/59
1963
Loyd Whitt
7
8/21/59
1964
Mahlon Whitt
8
8/21/59
1964
Mary Whitt
Richardson
9
8/21/59
1964
Margaret Ann
Whitt
10
8/21/59
1964
Margaret Ann
Whitt
11
8/21/59
1964
Margaret Ann
Whitt
12
8/21/59
1964
Willard Whitt
13
8/21/59
1964
Willard Whitt
14
3/1/32
1964
Willard Whitt
15
Audry Whitt
16
8/13/52
1963
Willard Whitt
17
8/13/52
1963
Thomas Whitt
18
8/13/52
1970
Alton Whitt
*540 Agreed Fair
Approximate
Market Value
at date of
Number
Elbert B.
Tract No.
of Acres
County
Whitt's death
1
118.5
Limestone
$ 32,588
2
63  Limestone
18,900
3
70  Limestone
21,000
4 50  Limestone
15,000
5
40  Madison
12,000
6
160
Limestone
48,000
7
118.5
Limestone
32,588
8
60  Limestone
18,000
9
40  Limestone
12,000
10
40  Limestone
12,000
11
40  Limestone
12,000
12
40  Limestone
12,000
13
40  Madison
12,000
14
40  Madison
12,000
15
60  Limestone
18,000
16
110
Limestone
33,000
17
97  Limestone
29,100
18
191.5
Lincoln and
Giles, Tenn.
67,350
$417,526
On August 21, 1959, Elbert and Nellie Whitt executed a warranty deed which purports to convey 160 acres (Tract No. 6) to their son, Loyd Whitt. The deed recites receipt of "ten dollars and other valuable considerations." Loyd Whitt did not pay his parents any cash for this land. Within 6 months of the date of the deed Loyd Whitt built a house and moved on the land. He planted crops and worked the land continuously. He also paid the property taxes and received income from the 160 acres. On August 21, 1969, Elbert and Nellie Whitt executed warranty deeds which purport to convey approximately 120 acres (Tract Nos. 9 10 and 11) to their granddaughter, Margaret Ann Whitt. These deeds recite the receipt of "ten *541 dollars and other valuable considerations." Margaret Ann Whitt's father, Thomas Melvin Whitt, died in 1957. Subsequently, Elbert Whitt told Margaret's mother, Catherine Riethmaier, that he had given some land to Margaret. No monetary payment was made for this land. Catherine Riethmaier, as guardian for Margaret Ann Whitt, took possession of these tracts of land only after the death of Elbert Whitt. Neither Margaret Ann nor her mother paid property taxes or received any income from this land prior to Elbert Whitt's death. During the period from the date of the warranty deeds until Elbert Whitt's death, some of the land deeded to Margaret Ann Whitt was cultivated and hogs were raised on the land. She did not receive any income from this land prior to her grandfather's death. On August 13, 1952, Elbert and Nellie Whitt signed a warranty deed which purports to convey 110 acres to Willard Whitt (Tract No. 16). This deed recites consideration of $1,500. Willard Whitt did not pay his parents any cash for this land. On March 1, 1932, Bennie and Ellis Reyer signed a warranty deed which purports to convey 40 acres to Willard Whitt for a stated consideration of $650 (Tract No. 14). *542 On August 21, 1959, Elbert and Nellie Whitt signed two warranty deeds which purport to convey approximately 80 acres to Willard Whitt (Tract Nos. 12 and 13). Each deed recites receipt of "ten dollars and other valuable considerations." Willard Whitt did not pay his parents any cash for this land. Willard took possession of the three tracts of land, paid the property taxes and reported any income earned from the land on his income tax returns. On August 13, 1952, Elbert and Nellie Whitt signed a deed which purports to convey six parcels of land totaling approximately 191.5 acres (Tract No. 18) to Alton Whitt. Alton paid the $3,000 consideration stated in the deed to his parents in installments of $1,000 a year for 3 years. On August 21, 1959, Elbert and Nellie Whitt signed a deed which purports to convey 118.5 acres in Limestone County, Alabama, to Alton Whitt (Tract No. 1). The deed recites receipt of "ten dollars and other considerations. " Alton Whitt did not pay any cash for this land. Alton did not farm this parcel himself because it was located 8-10 miles away from his farm but did permit his brothers to farm it. He cut timber off the tract and received a check from *543 the Tennessee Valley Authority in payment for a right of way over the land prior to his father's death. Alton Whitt was unmarried and lived at home with his parents until their deaths. He received two $10,000 certificates of deposit and one $10,000 savings account from his father's estate. He had not made any monetary contribution toward these accounts. He also received two notes receivable for $10,000 and $3,450, respectively. He gave his sister and brothers their respective shares of the amounts of the notes. On August 21, 1959, Elbert and Nellie Whitt signed a warranty deed which purports to convey 118.5 acres to Mahlon Whitt (Tract No. 7). He did not pay any cash to his parents for this land. He took possession of the land and received the income from it. During the years Mahlon Whitt filed income tax returns he reported the income received from the land. On August 21, 1959, Elbert and Nellie Whitt signed a warranty deed which purports to convey approximately 60 acres in Limestone County, Alabama, to Mary Whitt Richardson (Tract No. 8). The deed recites the receipt of "ten dollars and other valuable considerations." On August 21, 1959, Elbert and Nellie Whitt signed *544 three warranty deeds which purport to convey three tracts of land consisting of 63 acres, 70 acres, and 50 acres, respectively, in Limestone County, Alabama, to Audry Whitt (Tract Nos. 2, 3 and 4). Each of these deeds recites the receipt of "ten dollars and other valuable considerations." On August 13, 1952, Elbert and Nellie Whitt signed a warranty deed which purports to convey 97 acres in Limestone County, Alabama, to Thomas Melvin Whitt (Tract No. 17). The deed receits consideration of $1,500. On unknown dates Elbert and Nellie Whitt signed two deeds which purport to convey two tracts of land consisting of 40 acres in Madison County, Alabama, and 60 acres in Limestone County, Alabama, to Audry Whitt (Tract Nos. 5 and 15). All of the deeds introduced into evidence purport to convey a fee simple title to the stated grantees without restriction or reservation. During 1975, Larry Hollingsworth, Special Agent of the Internal Revenue Service Intelligence Division, participated in an investigation of the Estate of Elbert B. Whitt. At the time of the criminal investigation, the Estate of Elbert B. Whitt had not filed an estate tax return. The return was subsequently filed on September *545 16, 1975, with the Internal Revenue Service Center in Chamblee, Georgia. Loyd Whitt was not indicted on any criminal charges involving the failure to file an estate tax return for the Estate of Elbert B. Whitt. In 1975, respondent's expert witness, Richard A. Parks, appraised 980 acres of the above-described tracts of land as of the date of Elbert B. Whitt's death, June 14, 1969 (Tract Nos. 1-15). He assigned a value to this land of $288,076. In 1978, respondent appraised the remaining 398.5 acres of the above-described land (Tract Nos. 16-18) and determined that its fair market value as of the date of Elbert B. Whitt's death was $129,450. This total date of death value of $417,526 ($288,076 plus $129,450) for the 18 tracts of land determined by respondent is not contested by petitioners. In the notice of deficiency (docket No. 13389-78) respondent determined that when Elbert B. Whitt died he was the owner of certain bank accounts and notes receivable with a value of $52,238.78.Solely in compromise of the amount the parties have agreed that the notes had a date of death value of $40,076, determined by discounting the notes to return an interest rate of 9 percent.
The respondent *546 further determined that when Elbert B. Whitt died certain farm equipment and cattle with a total value of $17,498.41 which were not reported on the estate tax return were either owned by him or were assets in which he had transferred ownership but retained the use and possession for a period that did not end prior to his death. The respondent further determined that prior to his death Elbert B. Whitt did not effectively transfer ownership of certain parcels of real property with a value of $417,526 so as to preclude their inclusion in his gross estate. Alternatively, the respondent determined that Elbert Whitt retained the use and possession of, or the right to income from the real property, the ownership of which he had otherwise transferred during his lifetime, for a period that did not end prior to his death. The respondent further determined that all or part of the underpayment of tax required to be shown on the estate tax return of the Estate of Elbert B. Whitt is due to fraud. In the alternative to fraud, the respondent determined that the Estate of Elbert B. Whitt is subject to the addition to tax under section 6651(a). As an alternative to the primary and alternative positions *547 taken in the estate tax notice of deficiency applicable to the 18 tracts of land, the respondent alternatively determined in the gift tax notice of deficiency (docket No. 5422-79) that during 1963 Elbert B. Whitt transferred real property with a value of $77,616.16 for less than full and adequate consideration and that during 1964 Elbert B. Whitt transferred real property with a value of $170,431.67 for less than full and adequate consideration. The respondent further determined that because Elbert B. Whitt did not file gift tax returns relating to these transfers within the prescribed time for filing and because no showing has been made that the failures to timely file such gift tax returns were due to reasonable cause, the Estate of Elbert B. Whitt is subject to the addition to tax for each of the years 1963 and 1964 under section 6651(a)(1). The respondent further determined that Elbert B. Whitt's failure to pay gift taxes for 1963 and 1964 was due to negligence or intentional disregard of rules and regulations. Accordingly, respondent determined that the Estate of Elbert B. Whitt is subject to the addition to tax under section 6653(a). FINDINGS OF FACT -- AUDRY J. WHITT Audry *548 J. Whitt, a son of Elbert B. Whitt and a resident of Limestone County, Alabama, died intestate at the age of 52 on February 26, 1970. On March 4, 1970, Loyd Whitt and Willard Whitt were appointed co-administrators of their brother's estate. The Estate of Audry J. Whitt is the petitioner in docket No. 13388-78. A Federal estate tax return for the Estate of Audry J. Whitt was filed on September 16, 1975, with the Internal Revenue Service Center in Chamblee, Georgia. [9]
The following schedule represents the bank accounts and certificates of deposit, including accrued interest, of Audry J. Whitt as reported on his estate tax return, and as agreed by parties that he owned at the time of his death: As
Agreed
Reported
Amount
First Federal Savings &
Loan Assn. of Decatur, [10] *549 C.D. #7806
$10,000.00
$10,531.90
Central Bank of Alabama,
Athens, C.D. #511
10,000.00
10,000.00
First Federal Savings & Loan
Assn. of Huntsville, C.D.
#B-326
10,000.00
10,379.70
First National Bank of
Pulaski, Tennessee
2,337.00
2,337.00
First National Bank of
Pulaski, Tennessee -
Savings Account
10,000.00
10,000.00
Accrued Interest on Bank
Accounts
0
125.00
First Federal Savings &
Loan Assn. of Decatur,
C.D. #15,721
0
1,947.56
Totals
$42,337.00
$45,321.16
The following schedule represents the notes receivable, including accrued interest, of Audry J. Whitt, as reported on his estate tax return, and as agreed by the parties that he owned at the time of his death: Debtor
As Reported
Agreed Amount
James Holt
$12,000
$12,000   Donny Young
9,000
0   J. D. Reyer
8,000
8,000   Billy Vickers
7,750
7,750   Thomas W. Campbell
6,300
6,300   Ray Austin Campbell
5,300
5,300   Leon Luna
5,000
4,400   Junior Reyer
4,000
2,500   Lawrence Clem
3,700
3,700   William D. Pollitz
3,230
3,230   Elmer Reyer
2,500
4,000   Silas Eckstein
2,000
2,000   Jessie Fred Eckstein
2,000
0   Jessie Eckstein
0
3,500   Fred Eckstein
0
3,500   John Henry Clem
2,000
2,000   Claude Lewter
1,170
1,170   Early Culps
700
747   Mrs. Charles Boley
0
2,375   Henry Brooks
0
1,000   Martha Hargrove
0
400   Albert Hemphill
0
741   Ronald Malone
0
10,000   Edwin R. Perry
0
1,105   $74,650
$85,718   Accrued Interest on
above notes
0
2,571.54
Total
$74,650
$88,289.54 Martha L. Hargrove of Ardmore, Tennessee, borrowed $400 from Audry Whitt at 6 percent interest in 1969. She repaid this loan by check to Willard Whitt in July 1970. The amount of the *550 check was $424. The $24 represented interest on the loan. After the death of Audry J. Whitt, Willard Whitt, as co-administrator of his estate, was aware that Audry had received certificates of deposit from his father totaling $30,000. He also knew that Audry owned six tracts of land totaling 343 acres. Approximately 1 year after Audry's death, the decedent's heirs (the remaining brothers and sister and one niece) agreed that the 343 acres of land had a value of $81,000. Each heir agreed to either buy or sell his one-sixth interest in the land for $13,500. The Deed was executed on October 28, 1971. The purchaser of the land was Loyd Whitt and his wife, Mary B. Whitt. In the summer of 1971 Alton Whitt received from Willard Whitt $13,500 for his one-sixth share of the agreed value of Audry's land. Six members of the Whitt family each received benefits from Audry's estate of $33,808. The decedent's 343 acres of real property consisted of six parcels containing the following number of acres: 63 acres, 70 acres, 50 acres, 40 acres, 60 acres, and 60 acres. [11] The tracts are used primarily for the cultivation of crops. The portions of the tracts not used for farming contain numerous *551 hardwood trees. In connection with the investigation into the failure to file as estate tax return respondent had an appraisal of the decedent's real estate made in 1975. Respondent's appraiser, Richard A. Parks, is a member of the Society of Real Estate Appraisers, the American Society of Appraisers and the Georgia Association of Tax Assessing Officials. Prior to his appraisal of the subject property Mr. Parks had appraised rural property in southern Alabama. Willard Whitt has a college degree and was a high school teacher for 32 years. Loyd Whitt is a high school graduate and served in the armed forces. During 1975, Larry Hollingsworth, Special Agent of the Internal Revenue Service Intelligence Division, participated in an investigation of the Estate of Audry J. Whitt with Estate Tax Attorney Olie H. Phillips. The co-administrators of Audry's estate sought the services of an attorney and filed the estate tax return after commencement of the criminal investigation. Willard Whitt was indicted for willful failure to file *552 a United States Tax Return for the Estate of Audry J. Whitt in violation of section 7203. On or about June 13, 1977, Willard Whitt pleaded nolo contendere to the indictment. He was found guilty on his plea and sentenced to pay a fine of $100.All charges were dismissed as to Loyd Whitt. J. Gilmer Blackburn, attorney at law, received a total payment of $13,000 for legal services relating to the criminal investigation of both estates. An estate tax return for the Estate of Audry J. Whitt was filed in September of 1975. In the notice of deficiency the respondent determined that the value of Audry J. Whitt's 343 acres of land at the date of his death was $300 an acre or a total of $102,900, an increase of $21,900 over the amount reported on the estate tax return. The respondent also determined that when Audry J. Whitt died he was the owner of certain bank accounts, certificates of deposit and notes receivable with a value of $66,959.41. In compromise of the amount, the parties have agreed that the notes had a date of death value of $59,745, determined by discounting the notes to return an interest rate of 9 percent. Finally, the respondent determined that all or part of the underpayment *553 of tax required to be shown on the estate tax return of Audry J. Whitt is due to fraud or, in the alternative, that the late filing penalty of section 6651 is applicable. OPINION As a preliminary matter, we note that petitioners' chances of prevailing on many of the issues presented in these consolidated cases have been hampered by their counsel's apparent misunder-standing of the nature and the placement of the burden of proof. Petitioners' case in chief consisted of the introduction of several exhibits and an unsuccessful attempt to present the testimony of an attorney as to his legal opinion of the effectiveness under Alabama law of certain deeds to convey legal title to real property to the stated grantees. The Court sustained respondent's objection on the basis of relevancy and suggested to petitioners' counsel that he was confusing property rights with the tax consequences of a transaction. Petitioners' counsel then rested his clients' case despite the Court's repeated admonition that the burden of proof was upon his clients as to most issues. [12] *554 A presumption of correctness attaches to respondent's determination in the notice of deficiency. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The nature of this burden of proof is described in Lyon v. Commissioner,1 B.T.A 378, 379-380 (1925): [Rule 142(a) of this Court] provides that the burden of proof is on the taxpayer. That means that he must introduce sufficient evidence to make a primafacie showing that the Commissioner committed the errors alleged in the petition and to overcome the proofs submitted on behalf of the Commissioner.Such a showing must cover all the elements necessary to establish the averments of the petition. This [Court] is required by law to make findings of fact. Such findings can not be made upon conjecture, exparte statements, or argument. They must be supported by evidence presented to the [Court]. * * * We can not assume what might be proven by evidence which was not introduced. Our inability to make findings favorable to the petitioners on the basis of conjecture or argument on brief *555 has required the resolution of many of the issues presented here in favor of respondent. Real Property - Elbert B. Whitt (Docket Nos. 13389-78 and 5422-79)
The first issue for our resolution is whether Elbert Whitt effectively transferred certain tracts of real property during his lifetime so as to preclude their inclusion in his gross estate under either section 2033 or section 2036(a)(1). Alternatively, we must decide whether Elbert Whitt made inter vivos gifts of these properties which were complete in 1963 and 1964, the years in which the deeds were recorded. In order for there to be a completed gift of real property petitioner must prove that there was a conveyance sufficient to vest legal title in the donee and also that the donor relinquished dominion and control of the subject matter of the gift by delivery to the donee. Estate of Mortimer v. Commissioner,17 T.C. 579, 582 (1951). [13] *556 Section 2033 provides that the "value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." In the notice of deficiency for the Estate of Elbert B. Whitt (docket No. 11389-78), respondent determined that 18 tracts of real property with a fair market value of $417,526 as of the date of Elbert B. Whitt's death are includable in his estate. Respondent's primary position is that for Federal estate tax purposes, Elbert Whitt did not effectively transfer any of the 18 parcels of property prior to his death and that, *557 therefore, he retained ownership of them as of the date of his death. Respondent alternatively argues that Elbert Whitt retained possession or enjoyment of, or the right to income from, the properties so as to require their inclusion in his estate under section 2036(a).Section 2036(a) provides in pertinent part as follows: (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- (1) the possession or enjoyment of, or the right to the income from, the property * * *. Section 2036 is designed to include in the gross estate of a decedent all property incompletely transferred during his lifetime. This section requires property to be included in a decedent's gross estate if he retained actual possession or enjoyment (i.e., delayed outright disposition until his death) Guynn v. United States,437 F.2d 1148 (4th Cir. 1971). *558 The donor's interest need not be reserved by the instrument of transfer nor need it be legally enforceable. Estate of McNichol v. Commissioner,265 F.2d 667 (3d Cir. 1959), affg. 29 T.C. 1179 (1958).The term "enjoyment" as used in section 2036(a)(1) is synonymous with substantial present economic benefit. United States v. Byrum,408 U.S. 125, 145 (1972). Possession or enjoyment of the property purportedly transferred is retained when there is an express or implied understanding to that effect at the time of the transfer. Guynn v. United States,supra;Estate of Rapelje v. Commissioner,73 T.C. 82, 86 (1979); Estate of Linderme,52 T.C. 305, 308 (1969). We must consider all the facts and circumstances surrounding the transfers as well as the subsequent use of the property in determining whether such an implied understanding existed among the parties. Section 20.2036-1(a), Estate Tax Regs. The burden of proof is on petitioner to establish that an implied agreement did not in fact exist. Where respondent has determined that an intrafamily prearrangement existed, proving the nonexistence of such an agreement is especially difficult. Estate of Hendry v. Commissioner,62 T.C. 861, 872 (1974); *559 Estate of Kerdolff v. Commissioner,57 T.C. 643, 648 (1972). Respondent's second alternative position relating to the 18 tracts of real property is that Elbert B. Whitt transferred during his lifteime this property or interests therein without full and adequate consideration to his children and his granddaughter which gifts were completed during 1963 and 1964, the years in which the deeds were recorded.Respondent determined that the value of these gifts was $77,616.16 in 1963 and $170,431.56 in 1964. Petitioner's position is that the deeds purporting to convey the land to the decedent's children and granddaughter are effective under Alabama law to convey fee simple title to the stated grantees and, therefore, such deeds are conclusive evidence of the effectiveness of the transfer.Petitioner argues that the relevant State statute dealing with the conveyance of land, Ala. Code Sec. 34-4-20, requires only that the conveyance of the land be in writing, be signed and be attested by one witness. Because the deeds fulfill these requirements the land was "legally" transferred in the years the deeds are dated, 1952 and 1959. Therefore, petitioner concludes, Elbert B. Whitt, did not retain *560 any rights or interests in the property which could be included in his estate. Respondent counters by arguing that the effectiveness of the deeds themselves under State law is irrelevant. We agree. In Estate of Mortimer v. Commissioner,supra, we considered a similar argument. Petitioner contended that the deeds in fee simple contained no reservations in decedent's favor and, therefore, under State law operated to divest him of all incidents of ownership. We stated: The basic question goes much deeper than petitioner's arguments, which are bottomed upon an assumed transfer of the properties in fee * * *. We think the facts establish that decedent never completed the inter vivos gifts. If the gifts were not completed, decedent remained the owner of the properties until his death, and the value thereof is includible in his gross estate * * *. [Estate of Mortimer v. Commissioner,supra, at 582.] The tax effects of the transactions at issue here are determined by Federal rather than State law. In Morgan v. Commissioner,309 U.S. 78, 80-81 (1940), the Supreme Court stated: State law creates legal interests and rights. The federal revenue acts designate what interests or rights, *561 so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law. [Footnote omitted] Helvering v. Stuart,317 U.S. 154, 161-162 (1942). Thus, we must look to the Federal tax laws to determine whether the land is includable in Elbert B. Whitt's estate regardless of whether legal title passed to the grantees stated in the deeds under Alabama law prior to his death. Unfortunately, we must resolve these issues on the basis of a record lacking many relevant facts. As discussed, the burden of proving these facts is on petitioner and we must resolve doubts occasioned by petitioner's lack of proof in favor of respondent. Rule 142(a). In the interest of clarity the tracts of land purportedly conveyed to each grantee and the arguments of the parties with respect to them will be considered together.To reiterate, for each tract we must decide whether it is includable in Elbert B. Whitt's estate under section 2033 or section 2036(a)(1) *562 and/or whether the transfer constituted a gift taxable under section 2501(a). Tract No. 8 -- Mary Whitt Richardson
On August 21, 1959, Elbert and Nellie Whitt signed a warranty deed which purports to convey to their daughter, Mary, approximately 60 acres located in Limestone County, Alabama. The deed recites the receipt of "ten dollars and other valuable considerations." The deed was not recorded until March 13, 1964. Mary Richardson did not testify and no evidence other than the deed was presented concerning this purported conveyance. We have no information as to whether Mary paid anything for the land, whether she took possession of the land prior to her father's death or who paid the taxes and received the income, if any, from the land. Indeed, we do not even know whether Mary had knowledge of the execution of the deed prior to her father's death. As is the case with all of the deeds under consideration in this case, petitioner chose not to enlighten us as to who had possession of the deed to Tract No. 8 after its execution or why it was not recorded until years later. In Estate of Mortimer v. Commissioner,supra at 583, we stated that: it is a fundamental principle of law *563 that a deed to be operative must be delivered; it is delivery that gives the deed force and effect. * * * Furthermore, before there can be a completed delivery of a dee, which will become operative as a conveyance of title, the donee or grantee must accept.
Because petitioner has not sustained its burden of proving that Mary accepted the conveyance and that Elbert Whitt relinquished dominion and control of the land, we must sustain respondent's determination that the tract was not effectively conveyed to Mary Richardson prior to Elbert Whitt's death. Therefore, the agreed fair market value of this tract is includable in Elbert Whitt's gross estate under section 2033. Tract Nos. 9, 10 and 11 -- Margaret Ann Whitt
On August 21, 1959, Elbert and Nellie Whitt signed three warranty deeds which purport to convey a total of approximately 120 acres in Limestone County, Alabama, to Margaret Ann Whitt, the daughter of their deceased son, Thomas. These three deeds were recorded on March 13, 1964. No monetary payment was made in consideration of this land and Margaret's mother, Catherine Riethmaier, testified that as Margaret's guardian she took possession of this land only after Elbert Whitt's *564 death.Prior to his death neither she nor Margaret paid the property taxes.Additionally, even though some of the land was under cultivation and hogs were being raised on the property, Margaret did not receive any income from these three tracts prior to Elbert Whitt's death. Petitioner presented no evidence to contradict this testimony. Accordingly, we conclude that these tracts were not effectively conveyed to Margaret Ann Whitt prior to Elbert Whitt's death. Therefore, we sustain respondent's determination that they are includable in his estate under section 2033 at their agreed upon fair market values. Tract No. 17 -- Thomas Melvin Whitt
On August 13, 1952, Elbert and Nellie Whitt signed a warranty deed which purports to convey 97 acres in Limestone County, Alabama, to their son, Thomas Melvin Whitt. The deed recites consideration of $1,500 and was recorded in 1963. Thomas Whitt died in 1957 and was the father of Margaret Ann Whitt. No evidence has been presented as to whether the stated consideration of $1,500 was actually paid and if so whether that amount equalled the tract's fair market value at the time of conveyance, whether Thomas ever took possession of the land or why *565 the deed was not recorded until 6 years after his death.Indeed, we are not even told who is the current owner of the tract. Once again, because of petitioner's failure to meet its burden of proof we sustain respondent's determination that Elbert Whitt did not effectively transfer this tract of land during his lifetime. Therefore, the land is includable in his estate under section 2033 at its agreed upon fair market value as of the date of his death. Tract Nos. 1 and 18 -- Alton Whitt
On August 13, 1952, Elbert and Nellie Whitt signed a warranty deed which purports to convey 191.5 acres of land in Lincoln and Giles Counties, Tennessee to their son, alton (Tract No. 18). The 1952 deed stated that the tract was conveyed for $3,000 and "other good and valuable consideration." The deed was not recorded until December 8, 1970. Alton testified (on direct examination by respondent) that he recalled the transaction in 1952 and that he purchased the land from his parents at that time paying the $3,000 in installments of $1,000 a year for 3 years. He also testified that he rented out the cultivatable portion of the tract and used the remaining hilly portions as pasture. Although the facts *566 are not as clear and complete as we would like, we found Alton Whitt to be a credible witness and conclude that Tract No. 18 was sold to him in 1952 and that Elbert Whitt did not retain an interest in this tract at the time of his death so as to require its inclusion in his estate under either section 2033 or section 2036(a)(1). [14] On August 21, 1959, Elbert and Nellie Whitt signed a warranty deed purporting to convey 118.5 acres of land in Limestone County, Alabama, to Alton Whitt (Tract No. 1). The 1959 deed states that the parcel was conveyed to Alton for "ten dollars and other considerations." This deed was recorded on September 11, 1964. Alton testified that he did not pay any money to his father in exchange for the 118.5 acres.Alton lived with his parents in their home until their deaths and has never been married. On cross-examination *567 by petitioner's counsel, Alton testified that he performed services for his parents including working around the farm and staying up at night to care for his father after he suffered a stroke in December of 1968. On brief, petitioner argues that the performance of these services constituted payment for the land. However, these services were only vaguely alluded to in Alton's testimony and the record does not support a finding that an agreement existed between Elbert and Alton to the effect that he would perform services for his father in exchange for the land. In fact, on redirect examination by respondent, Alton testified that he would have performed these services for his father even if he hadn't received the land. In addition, we are not told when this alleged agreement was made, what services were to be performed and for what period of time and whether Alton fulfilled his obligations under the terms of the agreement. Petitioner had ample opportunity to question Alton regarding this alleged agreement but chose not to do so. The inference from this failure to produce such evidence is that the withheld evidence would not have supported petitioner's position. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), *568 affd. 162 F.2d 513 (10th Cir. 1947). Thus, we conclude that no consideration was paid for Tract No. 1 and that its transfer to Alton constituted a gift. We must next determine when the gift of Tract No. 1 became complete. Section 25.2511-2(a), Gift Tax Regs., provides in pertinent part that the gift tax is a "primary and personal liability of the donor, is an excise upon his act of making the transfer, [and] is measured by the value of the property passing from the donor." Section 25.2511-2(b) states that a gift is complete when "the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another." The gift tax "is not aimed at every transfer of the legal title without consideration. * * * It is aimed at transfers of the title that have the quality of a gift and a gift is not consummate until put beyond recall." Burnet v. Guggenheim,288 U.S. 280, 286 (1933); Todd v. Commissioner,51 T.C. 987, 991 (1969); Estate of Hite v. Commissioner,49 T.C. 580, 594 (1968). The record is unclear as to precisely when Alton began to exercise control over Tract No. 1. Alton testified that this parcel *569 was 8-10 miles from where he was farming and only contained 30-35 acres of cultivatable land and that he therefore allowed his brothers to farm it. [15] He did, however, cut timber from this parcel. He also testified that he received a payment for a power line right of way through this land from the Tennessee Valley Authority prior to Elbert Whitt's death. Because we are uncertain as to the actual date that the gift to Alton was completed (but do believe that it was prior to Elbert Whitt's death) we sustain respondent's alternative determination that the gift was complete in 1964, the year the deed was recorded. [16] *570 Tract No. 6 -- Loyd Whitt
On August 21, 1959, Elbert and Nellie Whitt executed a warranty deed which purports to convey 160 acres to their son, Loyd. The deed recites the receipt of "ten dollars and other valuable considerations." The deed was recorded on July 12, 1963. Loyd testified that he did not pay any money to his father for the land. However, at his father's request, he built a house and moved onto the 160 acre tract within 4-6 months of the date of the deed. He planted crops on the property, received all the income therefrom and paid the property taxes. Loyd further testified that he performed services for his parents in exchange for this property. We simply are not convinced that Loyd's services constituted a bargained for consideration for the land. Rather, we conclude that this transfer of 160 acres constituted a completed inter vivos gift to Loyd. However, as we have not been presented with evidence which would permit a conclusion that the gift was complete and irrevocable prior to the recordation of the deed, *571 we sustain respondent's determination that the gift was complete in 1963. See Gagne v. Commissioner,16 T.C. 498, 502 (1951). Tract Nos. 2, 3, 4, 5, and 15 -- Audry Whitt
On August 21, 1959, Elbert and Nellie Whitt signed warranty deeds which purported to convey three parcels consisting of 63, 70 and 50 acres, respectively, to their son (Audry) (Tract Nos. 2, 3, and 4). The deeds recite the receipt of "ten dollars and other valuable considerations." These three deeds were recorded on February 28, 1964. On unknown dates Elbert and Nellie Whitt conveyed two parcels consisting of 40 acres and 60 acres, respectively, to Audry Whitt (Tract Nos. 5 and 15). Copies of these deeds were not introduced into evidence. Audry Whitt died in February 26, 1970. Not one scintilla of evidence was presented relative to any of these five tracts as to whether Audry paid any consideration for the land, when he took possession of them or whether Elbert retained any interest in the land. Although it is possible that Audry exercised complete dominion and control over these five tracts years before Elbert Whitt's death, this is mere surmise on our part. We are not free to presume an answer favorable *572 to petitioner. Petitioner's failure to present any evidence to resolve these uncertainties requires a holding that the fair market value of these five parcels as of the date of Elbert Whitt's death is includable in his estate under section 2033. Rule 149(b). Tract No. 7 -- Mahlon Whitt
On August 21, 1959, Elbert and Nellie Whitt signed a warranty deed which purports to convey 118.5 acres to Mahlon Whitt.The deed recites the receipt of "ten dollars and other valuable considerations." The deed to this tract was recorded on September 11, 1964. Mahlon testified that he did not pay his parents any money for this land. Although there was some confusing testimony about a land swap, money owed to him by his father, and the performance of services in exchange for the land, there is simply no concrete evidence that the transfer of this tract to Mahlon was anything other than a gift. Mahlon testified that after he received the land in 1959 he rented it out to be farmed, [17] received the income generated thereby, and paid the assessed property taxes. Based on this testimony, we conclude that Elbert Whitt did not retain an interest in Tract No. 7 at the time of his death so as to require its *573 inclusion in his estate under either section 2033 or section 2036(a)(1). Although we found Mahlon's testimony as to his dominion and control over the property to be credible there is simply not enough evidence to conclude that the transfer of 118.5 acres by deed in 1959 was a complete and irrevocable gift in that year. Therefore, we must sustain respondent's alternative determination that the gift was not complete until 1964, the year the deed was recorded. Tract Nos. 12, 13, 14 and 16 -- Willard Whitt
On August 13, 1952, Elbert and Nellie Whitt signed a warranty deed which purports to convey 110 acres in Limestone County, Alabama, to their son, Willard Whitt (Tract No. 16). Although the deed recites consideration of $1,500 Willard testified that he did not pay any amount of cash to his parents for this land. Willard did testify, however, that after the deed was executed in 1952, he rented the land to a tenant farmer, received the income therefrom and paid the assessed property taxes. The deed to Tract No. 16 was recorded on June 21, 1963. On August *574 21, 1959, Elbert and Nellie Whitt signed a warranty deed which purports to convey two parcels of 40 acres each in Limestone County, Alabama, to Willard Whitt (Tract Nos. 12 and 13).Each deed recites the receipt of "ten dollars and other valuable considerations." Willard did not pay his parents any cash for these two tracts. Willard testified that he took possession of these two parcels and paid the property taxes. The deed to Tract No. 12 was recorded on February 28, 1964, and the deed to Tract No. 13 was recorded on March 20, 1964. Although we are convinced that the transfer of Tract Nos. 12, 13 and 16 were completed gifts to Willard prior to his father's death, there is not enough evidence to conclude that those gifts were complete and irrevocable prior to the recordation of the deeds. Thus, while the tracts are not includable in Elbert Whitt's estate under either section 2033 or section 2036(a)(1), we hold that petitioner made completed gifts of these three tracts in 1963 and 1964, the years the deeds were recorded. Petitioner introduced a copy of a deed purporting to be a conveyance by Bennie and Ellis Reyer of 40 acres in Madison County, Alabama, to Willard Whitt for a stated *575 consideration of $650 (Tract No. 14). The deed is dated March 1, 1932, and was recorded on March 20, 1964. Petitioner presented no further evidence concerning this parcel. The only reference to Tract No. 14 in petitioner's brief is the following: [R]espondent continually refers in his brief to the parcels of property listed in Exhibit C-1 as if all of the parcels were transferred by Elbert B. Whitt. Petitioner has already shown that Item 14 on Exhibit C-1 was never owned by the decedent. Trial Exhibit 11 is the deed conveying the property in Item 14 from Benny Reyer to Willard Whitt. This property was never owned by the decedent. Unfortunately for petitioner, we are unable to conclude from the mere introduction of this deed that Elbert Whitt never owned Tract No. 14 or did not possess an interest in this tract of land that would require its inclusion in his estate.We are left with many unanswered questions concerning the circumstances surrounding this purported transfer in 1932. For example, we are not told how old Willard was in 1932, who supplied the consideration for the transfer or whether Willard merely held the title as a nominee for his father. It is also possible that *576 Willard transferred the property to his father sometime after 1932. We are not even told who currently owns the property. Petitioner had ample opportunity to elicit testimony from Willard concerning this Tract but failed to do so. Respondent determined that Tract No. 14 is includable in Elbert Whitt's estate under section 2033. The mere introduction of this 1932 deed does not prove that decedent did not have an interest in this property which would require its inclusion in his estate under section 2033. Petitioner has failed to meet his burden of proof. Welch v. Helvering,supra.Respondent's determination, therefore, must be sustained. [18] *577 In summary, we conclude that because of petitioner's failure to meet its burden of proof, Tract Nos. 2, 3, 4, 5, 8, 9, 10, 11, 14, 15, and 17 are includable in Elbert Whitt's estate under section 2033 at their agreed upon fair market value as of the date of his death. [19] We further conclude that Tract Nos. 1, 6, 7, 12, 13, and 16 were completed gifts in the years the deeds were recorded. Finally, we conclude that Tract No. 18 was sold to Alton Whitt in 1952 and is not includable in Elbert Whitt's estate under either section 2033 or section 2036(a)(1). Fair Market Value of Gifts Completed in 1963 and 1964 (Docket No. 5422-79)
We have concluded that the transfer of Tract Nos. 6 and 16 constituted completed gifts in 1963, the year the deeds were recorded. We have also concluded that the transfer of Tract Nos. 1, 7, 12 and 13 were comleted gifts in 1964, the year those deeds were recorded. The parties agreed that the fair market value of these six parcels as of the date of Elbert *578 Whitt's death in 1969 was as follows: Tract No.
Amount
1
$32,588
6
48,000
7
32,588
12
12,000
13
12,000
16
33,000
Section 2512 provides that for the purposes of calculating gift tax liability when a gift of property is made "the value thereof as the date of the gift shall be considered the amount of the gift." Respondent determined that for purposes of determining gift tax liability the value of these tracts as of the date the deeds were recorded was as follows: [20]
Tract No.
Date of Gift
Amount
1
1964
$24,351.65
6
1963
33,838.11
7
1964
24,351.65
12
1964
8,967.10
13
1964
8,967.10
16
1963
23,263.70
Total Value of Gifts in 1963 -- $57,101.81 Total Value of Gifts in 1964 -- $66,637.50 These figures were computed by discounting the agreed upon date of death values to yield 6 percent compound appreciation. *579 Petitioner has not contested respondent's method of valuation and thus we assume that the issue was conceded. [21]
Lifetime Gift Tax Exemption for Spouse of Elbert B. Whitt (Docket No. 5422-79)
Section 2521, as in effect during the years in issue, provided: SEC. 2521. SPECIFIC EXEMPTION. In computing taxable gifts for the calendar year, there shall be allowed [as] a deduction in the case of a citizen or resident an exemption of $30,000, less the aggregate of the amounts claimed and allowed as specific exemption in the computation of gift taxes for the calendar year 1932 and all calendar years intervening between that calendar year and the calendar year for which the tax is being computed under the laws applicable to such years. The parties stipulated that Elbert B. Whitt did not file gift tax returns for 1963 and 1964. Respondent agrees, however, that the petitioner *580 in docket No. 5422-79 is entitled to a $30,000 lifetime specific gift tax exemption for the gifts that we have found were made in those years. Damner v. Commissioner,3 T.C. 638, 643 (1944). Petitioner argues that an additional $30,000 specific gift tax exemption should be allowed for Elbert's wife, Nellie Myrtle Whitt, because the deeds were signed by both parties and both individuals were still living in the years the deeds were recorded. Nellie Whitt died in 1966. The record is silent as to whether there was any administration of her estate. The Estate of Nellie Myrtle Whitt is not a party to this proceeding and no party has the authority to make any claim on her behalf. Respondent's determination that petitioner in docket No. 5422-79 is entitled to only a single $30,000 specific lifetime gift tax exemption is sustained.
Additions to Tax for Negligence and Failure to File Gift Tax Returns for 1963 and 1964 (Docket No. 5422-79)
Respondent determined in the notice of deficiency that if and to the extent we hold that taxable gifts were made by petitioner in 1963 and 1964 then the additions to tax under sections 6651(a) and 6653(a) are applicable. In relevant part, section 6651(a) *581 provides: (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor * * *, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. The relevant portion of section 6653(a) provides: (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. Petitioner has not presented any evidence concerning the applicability of these additions to tax even though it bears the burden of proof. Rule 142(a); Estate of DiRezza v. Commissioner,78 T.C. 19, 32 (1982); Estate of Mason v. Commissioner,64 T.C. 651, 663 (1975), *582 affd. 566 F.2d 2 (6th Cir. 1977); Capodanno v. Commissioner,69 T.C. 638, 650 (1978), affd. 602 F.2d 64 (3d Cir. 1979).On brief, petitioner argues that: The petitioners have at all times held the honest belief that the property in question was transferred at the time of the execution of the deeds by Mr. and Mrs. Whitt in 1952 and 1959. The children of the Whitts took immediate possession of the property at those times and considered it to be theirs. With such actions taken by Mr. and Mrs. Whitt and their children, it is reasonable for the petitioners to assume that no gifts were made in 1963 and 1964. This reasonable conclusion would constitute reasonable cause for the failure to file gift tax returns for 1963 and 1964. Similarly, this same conclusion would bar an assessment of the addition to tax for negligence and disregard of rules and regulations. * * * Unfortunately for petitioner the record reflects neither that Elbert Whitt "honestly belie[ved]" that the property was transferred as of the date the deeds were signed nor that the children "took immediate possession of the property" and "considered it to be theirs." It was precisely this failure of proof that required us *583 to sustain respondent's determination in docket No. 5422-79 that the transfer of Tract Nos. 1, 6, 7, 12, 13 and 16 did not constitute completed gifts until the years in which the deeds were recorded. This failure of proof also requires our conclusion that respondent's determination concerning the additions to tax must be sustained. Rule 149(b). Value of Real Property -- Audry Whitt (Docket No. 13388-78)
Section 2031(a) provides that the "value of the gross estate of the decedent shall be determined by including * * * the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." Section 20.2031-1(b), Estate Tax Regs., provides that the value of every item includable in the gross estate of the decedent is the fair market value as of the date of death. The regulations provide the following definition of the term "fair market value." [F]air market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. The fair market value of a particular item of property includible in the *584 decedent's gross estate is not to be determined by a forced sale price. Nor is the fair market value of an item of property to be determined by the sale price of the item in a market other than that in which such item is most commonly sold to the public, taking into account the location of the item wherever appropriate. [Section 20.2031-1(b), Estate Tax Regs.] Fair market value is a question of fact to be determined from all relevant evidence in the record. Kaplan v. Commissioner,43 T.C. 663, 665 (1965). Audry Whitt died intestate on February 26, 1970. Approximately one year later the decedent's heirs (his brothers, sister and niece) agreed that the 343 acres of land owned by the decedent had a value of $81,000 or $236.15 per acre. By a deed dated October 28, 1971, Loyd Whitt and his wife purchased the land from the other heirs. In the notice of deficiency dated September 8, 1978, respondent determined that the real property owned by decedent Audry Whitt had a fair market value at the date of his death of $300 an acre or a total of $102,900. Accordingly, respondent increased the value of Audry Whitt's taxable estate by $21,900. Respondent's expert, Richard Parks, made his appraisal *585 of the 343 acres owned by Audry Whitt using the market data approach. [22] Although there were some improvements existing on the land, Mr. Parks made his appraisal as if the land were unimproved. Mr. Parks selected the following four comparison sales in the vicinity of Ardmore, Alabama, which occurred relatively close in time to Audry Whitt's death. Date of Sale
Number of Acres
Price Per Acre
Aug. 1968
36.4
$247
Feb. 1969
100
314
Dec. 1968
160
337
Oct. 1968
40
282
Mr. Parks then adjusted these sales for inflation and the subject parcels' utility for farming using such factors as size, shape, and topography. Based on these comparable sales as adjusted, Mr. Parks concluded that $300 per acre was the fair market value of the 343 acres as of the date of Audry Whitt's death. Petitioner's sole evidence in support of his position that the fair market value of the 343 acres was $81,000 is the deed executed on October 28, 1971, by which five of the heirs sold their one-sixth interest in the land to the sixth heir, Loyd Whitt, for $13,500 each. Other than some vague testimony by *586 Alton Whitt to the effect that he was willing to either buy or sell the property for a total sales price of $81,000, there is no indication in the record how the heirs arrived at a value of $81,000 for the 343 acres. Petitioner did not introduce the report of an appraiser or the testimony of any witness in support of the lesser valuation figure. Petitioner presents us with only a deed representing a sale between related parties without any evidence that the agreement to sell the property for $81,000 was freely and fairly negotiated. The record is devoid of any information as to whether an appraisal was made after Audry's death, who determined the selling price, which heirs were interested in buying and selling, why Loyd Whitt was ultimately the purchaser and whether other concessions were made by the heirs. On brief, petitioner correctly states the general rule that the price set by a freely negotiated agreement made reasonably close to the valuation date is persuasive evidence of the fair market value of the property. Ambassador Apartments, Inc. v. Commissioner,50 T.C. 236, 244 (1968), affd. per curiam 406 F.2d 288 (2d. Cir. 1969); Rev. Proc. 79-24, 1979-1 C.B. 565. Petitioner *587 then argues that because respondent produced "no evidence that the agreement of the heirs was not freely negotiated * * * [it therefore] fairly represented the value of the lands as of the date of death of Audry J. Whitt." Again petitioner's misunderstanding of the burden of proof is apparent. A presumption of correctness attaches to respondent's determination of fair market value. Petitioner bears the burden of overcoming that presumption. Welch v. Helvering,supra;Swiss Colony, Inc. v. Commissioner,52 T.C. 25, 38 (1969), affd. 428 F.2d 49 (7th Cir. 1970); Rule 142(a).The transaction was not at arm's length, as between strangers, but rather was between family members and thus is subject to regid scrutiny. Mercil v. Commissioner,24 T.C. 1150, 1153 (1955). Petitioner has proved only that the land was sold, not that the sale was freely negotiated. Accordingly, respondent need not prove a negative (i.e., that the sale was not arm's length and not bona fide) in order to prevail. Based on the evidence presented or, more precisely, due to the lack of evidence presented, we are unable to find that petitioner has overcome the presumption of correctness of respondent's determination. *588 Petitioner has not proved that the $81,000 sale price was the fair market value of the decedent's 343 acres of real property and this failure is fatal to its position. [23] Therefore, we must sustain respondent's determination that the fair market value of the subject land at the data of Audry Whitt's death was $102,900.
Deductibility of Attorney Fees (Docket Nos. 13388-78, 13389-78)
The next issues for our decision are (1) whether the Estate of Audry J. Whitt is entitled to a deduction for attorney fees incurred in connection with the criminal *589 failure to file charges brought against the co-administrators of the estate and (2) whether the Estate of Elbert B. Whitt is entitled to a deduction for attorney fees incurred in connection with the criminal investigation into the failure of Loyd Whitt, as executor, to file the estate tax return. [24]
Willard Whitt was indicted for willful failure to file an estate tax return for the Estate of Audry J. Whitt in violation of section 7203. [25] *590 He entered a plea of nolo contendere in response to the misdemeanor indictment and accordingly was convicted and sentenced to pay a fine of $100. All charges filed against Loyd Whitt were dismissed.
J. Gilmer Blackburn, attorney at law, represented both Estates during the criminal investigation and received total legal fees of $13,000 as payment for his services.Mr. Blackburn allocated these fees as follows: $5,000 to the Estate of Elbert B. Whitt, $5,000 to the Estate of Audry J. Whitt, and $3,000 to Willard Whitt personally. [26]
In order to be deductible administration expenses must pass two tests: (1) they must be allowable under State law, and (2) they must meet the requirements of respondent's regulations. Estate of Reilly v. Commissioner,76 T.C. 369, 372 (1981); Estate of Posen v. Commissioner,75 T.C. 355, 359 (1980). *591 [27]
Section 2053(a)(2) provides for a deduction from the gross estate for administration expenses which are allowable by the laws of the jurisdiction under which the estate is being administered. Section 20.2053-3(a), Estate Tax Regs., states that amounts deductible as administration expenses are limited to those expenses "actually and necessarily incurred in the administration of the decedent's estate." [28] *593 Concerning the deductibility of attorney fees as administration expenses, section 20.2053-3(c), Estate Tax Regs., provides in relevant part as follows: (1) The executor or administrator, in filing the estate tax return, may deduct such an amount of attorney's fees as has actually been paid, or an amount which at the time of filing may reasonably be expected to be paid. If on the final audit of a return the fees claimed have not been awarded by the proper court and paid the deduction will, nevertheless, be allowed, if the district director is reasonably satisfied that the amount claimed will be paid and that it does not exceed a reasonable remuneration for the services rendered, taking into account the size and character of *592 the estate and the local law and practice. If the deduction is disallowed in whole or in part on final audit, the disallowance will be subject to modification as the facts may later require. (3) Attorneys' fees incurred by beneficiaries incident to litigation as to their respective interests do not constitute a proper deduction, inasmuch as expenses of this character are incurred on behalf of the beneficiaries personally and are not administration expenses. Neither the statute nor the regulations specifically address the issue of whether legal fees paid by an estate in connection with respondent's criminal investigation and to defend criminal charges brought against its executor or administrator for failure to file an estate tax return are properly deductible as administration expenses. Respondent contends that the payment of such fees is not properly the expense of the estate as such but rather is a personal expense of the executors.The essential determination is whether these expenses were incurred for the benefit of the estate or for the personal benefit of the executors. Commercial National Bank of Charlotte v. United States,196 F.2d 182, 184 (4th Cir. 1952). As directed by section 2053(a)(2), to resolve this issue we first must look to Alabama law to determine whether the payment of such attorney fees would be "allowable" as an administration expense under State law. Pitner v. United States,388 F.2d 651, 655 (5th Cir. 1967). Ala. Code section 34-3-60 *594 (1975) which deals with the awarding of attorney fees as costs in connection with the administration of an estate provides as follows: Fees paid as part of costs in partition and trust proceedings. In all actions and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, [29] *595 or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint or common property, or any party in the action or proceeding, and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind. In Zimmerman v. First National Bank of Birmingham,348 So.2d 1359, 1367 (Ala. 1977) the Supreme Court of Alabama re-examined and followed a well-established line of cases interpreting this statute as requiring that the "service rendered must be for the common benefit of all the beneficiaries" rather than "in behalf of individual interests." McCulloch v. Roberts,292 Ala. 451, 296 So.2d 163 (1974); Pate v. Law,277 Ala. 608, 173 So.2d 596 (1965); Farmers' Bank & Trust Co. v. Borroughs,217 Ala. 97, 114 So. 909 (1927). The common thread appearing in the Alabama cases interpreting this statute is that the legal fees must be incurred in a matter that is common to the beneficiaries rather than antagonistic. McCulloch v. Roberts,supra. The statute was not intended to authorize beneficiaries "to employ at the expense of the trust attorneys or solicitors for the litigation among themselves *596 of adversary claims as to their respective interests in the trust. In such questions, the trust as a trust is not interested * * *." Wilks v. Wilks,176 Ala. 151, 57 So. 776, 778 (1912). In Bidwell v. Johnson,191 Ala. 195, 67 So. 985 (1915), the court, in disallowing fees incurred by legatees to obtain a speedier settlement of the estate, stated: In allowance of fees for counsel * * * it should be kept in mind that ordinarily there should be an estate or fund discovered, rescued or preserved, which would otherwise be beyond the reach of the parties interested, and that the parties should not be required to contribute to the expense of a barren litigation.[67 So.2d 985, 988 (1915)]
In Ingalls v. Hare,266 Ala. 221, 96 So.2d 266 (1957), the Supreme Court of Alabama, in allowing attorney fees for the representation of trustees who were charged with fiduciary misconduct, noted that: We are clear to the conclusion that the successful defense of the several trustees * * * in the removal cases redounded to the benefit of the trusts involved and that such defense was made in good faith. * * * [T]he trusts involved in the removal suits received benefits from the services rendered by the *597 attorneys who represented the respondent trustees. [96 So.2d at 273] Similarly, in a more recent case, Birmingham Trust National Bank v. Henley,371 So.2d 883 (1979), the Supreme Court of Alabama allowed attorney fees to be taxed against a trust in defending an action for removal of a bank as a co-trustee of a charitable trust. Neither the parties nor the Court has been able to find a pronouncement by an Alabama court directly in point on the issue before us. However, we conclude from our review of Alabama case law on the general issue of attorney fees that Alabama courts would allow deduction of such attorney fees as are under present consideration [30] when the appropriate case should arise. Pitner v. United States,supra.
We also are convinced that the payment of the instant attorney fees meets the requirements of respondent's regulations. The fees were incurred in connection with respondent's criminal investigation of both estates and to defend criminal charges brought against *598 the executors of the Estate of Audry J. Whitt for failure to file the estate tax return. Clearly the charges were brought against Loyd and Willard Whitt in Their capacities as co-administrators and executor, not as individuals. Cf. United States v. Gilmore,372 U.S. 39 (1963). This is not a case where legal fees were incurred by a beneficiary in litigation over his own interests where the Estate merely occupied the position of a stakeholder. See Estate of Dutcher v. Commissioner,34 T.C. 918, 925 (1960); Abbett v. Commissioner,17 T.C. 1293, 1301-1303 (1952). Rather, the fees incurred in connection with respondent's investigation and in defense of these criminal charges were "essential to the proper settlement of the estate." Section 20.2053-3(a), Estate Tax Regs.; Estate of Reilly v. Commissioner,supra at 373. The Estates as a whole received a benefit from the legal services rendered to the executors. [31] *599 *600 Therefore, payment for such services is deductible as an administration expense under section 2053(a)(2). Farm Equipment and Cattle (Docket No. 13389-78)
The next issue for our decision is whether Elbert B. Whitt owned at the time of his death *601 or during his lifetime retained the use and possession of farm equipment with a value of $8,495 and cattle with a value of $9,003.41, the ownership of which he had otherwise transferred, for a period that did not end before his death. The parties stipulated that farm equipment with values totalling $8,495 which is reported in the depreciation schedules of Elbert Whitt's 1967 and 1968 income tax returns is includable in the gross estate of Elbert B. Whitt. As reported
Agreed Amount
Ford Tractor
$ 425
Hay Baler
155
Mowing Machine
178
Massey Ferguson Tractor
4,880
GMC Truck
593
Manure Spreader
177
Wagon
55
International Truck
1,300
Ford Corn Picker
420
Elevator
216
Four Wheel Wagon
96
Totals
$8,495
However, a caveat was added to the stipulation that the petitioners "make no representation that said items were in existence as of the date of death of Elbert B. Whitt or, if in existence, that such were owned by Elbert B. Whitt at his death." Elbert Whitt's 1967 and 1968 Federal income tax returns clearly indicate that the decedent owned machinery and cattle during those years. [32] He reported income from the sale of cattle of $1,753.30 in 1967 and $1,064.41 in 1968. In 1969 prior to his death, Elbert Whitt received *602 checks from the sale of cattle totaling $1,759.79. On July 3, 1969, subsequent to Elbert Whitt's death, Farmers Auction Company issued two checks both in the joint names of Loyd and Willard Whitt totaling $9,003.41. With the exception of the Massey Ferguson tractor all the farm equipment determined by respondent to be includable in the Estate of Elbert B. Whitt was depreciated on both his 1967 and 1968 returns. Significantly, the Massey Ferguson tractor first appears on the 1968 return with the notation that it was first put into service in 1968 and that its purchase price was $6,100. Total depreciation of $2,837 and $3,697 for farm equipment was claimed on Elbert Whitt's returns for 1967 and 1968, respectively. Petitioner presented no credible evidence on this issue. *603 No attempt was made to explain how Elbert Whitt could sell cattle and depreciate farm equipment if such items were not owned by him. Petitioner's bald assertion that Elbert Whitt did not engage in any farming activities after 1959 is simply not supported by the record. [33] We sustain respondent's determination that Elbert Whitt owned cattle with a value of $9,003.41 and farm equipment with a value of $8,495 at the time of his death, as determined by respondent. Fraud (Docket Nos. 13388-78 and 13389-78)
We must next decide whether the Estate of Elbert B. Whitt and/or the Estate of Audry J. Whitt is liable for the addition to tax for fraud pursuant to section 6653(b). Section 6653(b) provides in relevant part: "if any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *" In deterining the amount of the underpayment, only the tax shown on a timely return is taken into account. Section 6653(c)(1). The existence of fraud is an issue *604 of fact to be determined from a consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). The law is clear that the burden of proving fraud is on the respondent and that such proof must be clear and convincing. Section 7454(a); Rule 142(b); Estate of Temple v. Commissioner,67 T.C. 143 (1976); Beaver v. Commissioner,55 T.C. 85, 92 (1970). However, respondent need not prove the precise amount of the underpayment resulting from fraud.Rather, respondent need prove only that "any part" of the underpayment was due to fraud. Plunkett v. Commissioner,465 F.2d 299 (7th Cir. 1972); Estate of Brame v. Commissioner,25 T.C. 824 (1956), affd. per curiam 256 F.2d 343 (5th Cir. 1958); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). As stated by the United States Court of Appeals for the Fifth Circuit: Fraud implies bad faith, intentional wrongdoing and a sinister motive.* * * Negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), *605 quoting Carter v. Campbell,264 F.2d 930, 935 (5th Cir. 1959); Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without opinion 621 F.2d 439 (5th Cir. 1980). In order to prove fraud, respondent must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead or otherwise prevent the collection of such taxes. Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968); Marcus v. Commissioner,supra. "Fraud implies bad faith, intentional wrongdoing and a sinister motive.It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion." Olinger v. Commissioner,234 F.2d 823, 824 (5th Cir. 1956) quoting Davis v. Commissioner,184 F.2d 86 87 (10th Cir. 1950). The executor of the Estate of Elbert B. Whitt was the decedent's son, Loyd Whitt. The co-administrators of the Estate of Andry Whitt were the decedent's brothers, Loyd and Willard Whitt. As the question of fraud is one of fact which is to be ascertained by an examination of the taxpayer's entire course of conduct, Fiorella v. Commissioner,361 F.2d 326 (5th Cir. 1966), affirming a Memorandum Opinion of this Court, we must *606 examine the course of conduct of Loyd and Willard Whitt and the entire record to determine whether any part of the underpayment in these cases is due to fraud. In so doing we have considered Willard Whitt's conviction on a plea of nolo contendere only as a part of the general background of the case. See Hershey v. Commissioner,T.C. Memo. 1962-277, affd. by unpublished opinion (9th Cir. 1964). Section 6018(a)(1) as in effect for the estates of decedents dying on or before December 31, 1976, required the executor to file an estate tax return at the death of a citizen or resident in all cases where the gross estate exceeds $60,000. Section 6075(a) as it was applicable to the estates of decedents dying on or before December 31, 1970, required that the returns required by section 6018(a)(1) be filed within 15 months after the date of decedent's death. There is no question that the executor and co-administrators did not file timely estate tax returns for the two estates. In fact, no estate tax returns were filed until respondent began a criminal investigation. There is also no doubt that both gross estates exceeded the $60,000 minimum filing requirement of section 6018(a)(1). However, *607 we are not convinced from the facts presented that the section 6653(b) additions to tax for fraud apply in these cases. Although we have found that many of the tracts of land which were ostensibly deeded to Elbert Whitt's children in 1952 and 1959 are includable in Elbert Whitt's estate, those findings were required by the abysmal state of the record and petitioner's failure to sustain its burden of proof rather than our being convinced by a full exposition of the facts that Elbert Whitt actually retained an interest in most of those tracts. Clearly, this failure of proof on petitioners' behalf is not adequate to sustain respondent's burden of proof on the fraud issue. George v. Commissioner,338 F.2d 221, 223 (1st Cir. 1964); Goldberg v. Commissioner,239 F.2d 316 (5th Cir. 1956); Reis v. Commissioner,1 T.C. 9, 13 (1942).
Petitioners argue that Loyd and Willard Whitt were inexperienced in their roles as executor and co-administrators and were not aware of the duties imposed on them under Federal tax law. They argue that their activities involved with the administration of the two Estates consisted entirely of duties involved with Alabama probate procedure and that most of the assets *608 (such as the real property and the certificates of deposit held jointly by the decedent and one of his children or his granddaughter which respondent determined are includible in Elbert Whitt's estate) never came into their hands. Section 20.2002-1, Estate Tax Regs., states in pertinent part: The Federal estate tax * * * is payable by the executor or administrator of the decedent's estate. This duty applies to the entire tax, regardless of the fact that the gross estate consists in part of property which does not come within the possession of the executor or administration. Thus, there is no doubt that the executor of an estate has the duty under Federal tax law to determine the full extent of the assets in an estate regardless of what actually comes into his possession. It is also clear that Loyd Whitt and Willard Whitt did not fulfill this duty.While this dereliction of duty constitutes negligence and perhaps even gross negligence, we are unable to find on these facts that the failure to file the instant estate tax returns constitutes fraud.
Respondent argues that Willard and Loyd Whitt knew that the filing requirement was $60,000 and that both of the gross estates exceeded that *609 amount. While there is some evidence that they were informed of the filing requirement during the probate of the Estates, we simply are not convinced by the record and certainly not by clear and convincing evidence that Loyd and Willard possessed the requisite sinister motive or even understood the nature and extent of their duties as executor and co-administrators under Federal tax law prior to respondent's initiation of the criminal investigation. Therefore, we hold that neither the Estate of Elbert B. Whitt nor the Estate of Audry J. Whitt is liable for the addition to tax for fraud under section 6653(b). Additions to Tax for Late Filing (Docket Nos. 13388-78 and 13389-78)
Section 6651(a)(1) provides for the imposition of an addition to tax for the failure to timely file a return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Generally, the burden is on the taxpayer to prove that the failure to file a timely return was due to reasonable cause. Fischer v. Commissioner,50 T.C. 164 (1968); Bebb v. Commissioner,36 T.C. 170, 173 (1961); Rule 142(a). Late filing will be held to be due to reasonable cause if the taxpayer exercised *610 "ordinary business care and prudence" in attempting to file a timely return. Section 301.6651-1(c)(1), Proced. & Admin. Regs. In docket Nos. 13388-78 and 13389-78 this issue was first raised by respondent in Amendments to Answer filed on November 19, 1980. The respondent, by not determining these additions to tax in the notice of deficiency but instead affirmatively pleading such has raised new matter for which he bears the burden of proof. Rule 142(a). When the estate tax return for the Estate of Elbert B. Whitt was filed in 1975, the following statement was attached to the return. STATEMENT AS TO REASONABLE CAUSE FOR THE LATE FILING OF THE ESTATE TAX RETURN OF ELBERT B. WHITT - DECEASED
Loyd Whitt, the Executor of the Estate of Elbert B. Whitt, is a full time farmer.He had no experience in administering estates and had never seen an Estate Tax Return, or been associated with the administration of any estate prior to his appointment as Executor of the Estate of Elbert B. Whitt.
In the administration of the Estate, an attorney advised the Executor that a Federal Estate Tax Return would be due only if the estate exceeded $60,000. The assets the Executor had under his administration *611 (probate assets) did not exceed the $60,000. In 1966, and 1967, Elbert Whitt transferred all of his certificate of deposits and savings accounts to his children by having a certificate issued in his name and the name of his child.Under the laws of the State of Alabama, Title 5, Sec. 128(2) 1940 Code of Alabama, the child received as of the date of transfer a present right to withdraw all of the funds. Because of this present right and the laws of the State of Alabama, the Certificate of Deposits and Saving Accounts were not part of the probate estate. Loyd Whitt, the Executor, and the other members of the family were not aware of Sec. 2040, 1954 Internal Revenue Code which requires the inclusion, in the gross estate, of the value of all property deposited by the decedent and other persons, with any person carrying on the banking business, in joint names and payable to either/or the survivor. This provision requires the account to be included in the Estate Tax Return, even though it was not part of the Probate Estate. When this provision of Sec. 2040 was brought to the attention of the Executor, he employed counsel to prepare the Estate Tax Return. The late filing of the return *612 was due to the incorrect interpretation of the law, and not due to the willful neglect of the Executor.Based upon the background of the executor it was not unreasonable for him to assume that an Estate Tax Return should not be filed unless the probate assets exceeded $60,000. Under penalties of perjury the undersigned Executor states that the above facts are true and correct, to the best of his knowledge and belief. When the estate tax return for the Estate of Audry J. Whitt was filed in 1975 the following statement was attached to the return. STATEMENT IN SUPPORT OF THE LATE FILING OF THE ESTATE TAX RETURN OF AUDRY JEROME WHITT DECEASED
Audry Jerome Whitt died on February 26, 1970 without a Last Will and Testament. Letters of administration were granted to Willard Whitt and Loyd Whitt by the Probate Court of Limestone County, on the 4th day of March, 1970. Loyd Whitt was the Executor of the Estate of Elbert Whitt, who died on June 14, 1969. Audry Jerome Whitt was a son and beneficiary of the Estate of Elbert Whitt. Willard and Loyd Whitt were not aware of the provision of the Federal Estate Tax Laws and had no experience in administering estates. They had been informed that *613 an Estate Tax Return would be due if the value of an estate exceeded $60,000.It was their impression that this amount applied to the probate estate for which they were responsible. The court set bond for the administrators on the 4th day of March 1970 at $50,000. Sec. 96 Title 61, 1940 Code of Alabama requires a Probate Judge to set a bond at double the estimated value of the personal property and double the estimated value of three years rental income or, at the descretion [sic] of the Probate Judge, at double the value of the personal and real property.As provided by Sec. 100, Title 61, 1940 Code of Alabama the Probate Judge is liable on his own bond for taking an insufficient bond from the administrator. The administrators discovered that the decedent had apparently made loans to various individuals during his lifetime.The amount and value of these loans could not be determined until sometime after the decedent[']s death. In addition the decedent, Audry Jerome Whitt, was a beneficiary under the Last Will and Testament of his father Elbert Whitt. Since Elbert Whitt had died just prior to the death of Audry Jerome Whitt, and the heirs of Elbert Whitt were the same as the heirs *614 of Audry Jerome Whitt the administration of the two estates were interwoven. The estate of Audry Jerome Whitt could not be determined until after the administration of the Estate of Elbert Whitt. When the provisions of the Estate Tax Law [r]equiring the filing of an Estate Tax Return were brought to the attention of the administrators, they employed counsel to prepare the Estate Tax Return. The late filing of the return was due to a[n] incorrect interpretation of the law, and not due to the willful neglect of the administrators.Based upon the background of the administrators, it was not unreasonable for them to assume that an Estate Tax Return should not be filed unless the probate assets exceeded $60,000. Under the penalties of perjury the undersigned administrators state that the above facts are true and correct, to the best of their knowledge and belief. Petitioners' argument on this issue is that Loyd and Willard Whitt did not know that the assets which were taxable for Federal estate tax purposes included assets not subject to their jurisdiction in State probate court under Alabama law. We believe the evidence clearly shows that they were negligent and did not exercise "ordinary *615 business care" in not determining whether returns were required to be filed. In Shoemake v. Commissioner,38 T.C. 192, 202 (1962) we stated: Whether a failure to file a return was due to reasonable cause is essentially a question of fact. * * * We have held that taxpayers who deliberately omit to file returns must use reasonable care to ascertain that no returns are necessary, and that in the absence of obtaining competent advice, the mistaken belief on the part of a taxpayer that no return was required under the statute does not constitute reasonable cause for noncompliance. * * * And it should be pointed out that ignorance of the law does not amount to reasonable cause for purposes of this statute [Citations omitted] We hold that respondent has sustained his burden of proving that no reasonable cause existed for the failure to timely file estate tax returns for the Estate of Elbert B. Whitt and the Estate of Audry J. Whitt. Decisions will be entered under Rule 155.
Footnotes
1. The following cases were consolidated with the above-captioned case for purposes of trial, briefing, and opinion: Estate of Elbert B. Whitt, Loyd Whitt, Executor, docket No. 13389-78 and Estate of Elbert B. Whitt, Loyd Whitt, Executor, docket No. 5422-79.↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
2. In Amendments to Answer filed on November 19, 1980, in docket Nos. 13388-78 and 13389-78, respondent alleged that if the Court does not find for respondent in regard to the addition to tax for fraud then, in the alternative, the Court should find that petitioners are liable for a 25 percent addition to tax pursuant to section 6651(a) for late filing of the estate tax returns. The alternative additions to tax are in the following amounts: Docket No. 13388-78 -- $4,966.16; Docket No. 13389-78--$38,609.44. 4. Our resolution of some of these issues eliminates the need for us to consider certain of respondent's alternative determinations. Additionally, other issues (common to more than one docket number) lend themselves to a single discussion. Therefore, our discussion of the questions presented will not necessarily follow the sequence in which they are listed.↩
5. The parties agree that the 18 parcels had an aggregate fair market value of $417,526 as of the date of Elbert Whitt's death. ↩
6. The parties stipulated that farm equipment reported in the depreciation schedules of Elbert Whitt's 1967 and 1968 income tax returns is includable in the estate tax return of Elbert Whitt at an agreed upon value of $8,495. A caveat was added, however, to the effect that petitioners did not stipulate that said items were in existence as of the date of death of Elbert B. Whitt or, if in existence, were owned by him at his death.
7. The remaining issues raised by the pleadings have been settled by agreement of the parties: (1) the parties agreed that Audry J. Whitt, the decedent in docket No. 13388-78, owned bank accounts and certificates of deposit at the date of his death in the total amount, including accrued interest, of $45,321.16, of which the amount of $42,337 was reported on the estate tax return; (2) the parties also agree that Audry J. Whitt owned notes receivable at the date of his death in the total amount, including accrued interest, of $88,289.54, of which the amount of $74,650 was reported on the estate tax return; (3) the parties further agree that Audry J. Whitt's notes receivable, including accrued interest, had a fair market value at the date of his death of $59,745, determined by discounting the notes to return an interest rate of 9 percent; (4) the parties agree that Elbert B. Whitt, the decedent in docket No. 13389-78, owned bank accounts and certificates of deposit at the date of his death in the total amount, including accrued interest, of $224,588.28, of which the amount of $222,098 was reported on the estate tax return; (5) the parties also agree that Elbert B. Whitt owned notes receivable at the date of his death in the total amount, including accrued interest, of $59,225, of which the amount of $28,938 was reported on the estate tax return; (6) the parties further agreed that Elbert B. Whitt's notes receivable, including accrued interest, had a fair market value at the date of his death of $40,076, determined by discounting the notes to return an interest rate of 9 percent; (7) the parties agree that the following items will be adjusted for a tax on a prior return to the extent we hold that such items are includable in both the Estate of Elbert B. Whitt and the Estate of Audry J. Whitt: Certificate of Deposit #7806 -- $10,000; Certificates of Deposit #511 -- $10,000; Certificate of Deposit #B-326 -- $10,000: Note receivable of Ronald Malone -- $10,000; Real Property -- $84,900; (8) the parties agree that the petitioner in each of the three consolidated cases is entitled to a deduction for reasonable attorney fees and other expenses in litigating these cases in this Court; and (9) the respondent agrees that the petitioner in docket No. 5422-79 is entitled to the $30,000 lifetime specific gift tax exemption for the decedent, Elbert B. Whitt, as provided by section 2521 (repealed for gifts made after December 31, 1976).
8. Attached to the return was a statement entitled "Statement as to Reasonable cause for the Late Filing of the Estate Tax Return of Elbert B. Whitt--Deceased." In the statutory notice of deficiency dated September 8, 1978, respondent did not determine an addition to tax for late filing of the return under section 6651(a). See note 2, supra.↩
9. Attached to the return was a statement entitled "Statement in Support of the Late Filing of the Estate Tax Return of Audry J. Whitt--Deceased." In the statutory notice of deficiency dated September 8, 1978, the respondent did not determine an addition to tax for late filing of the return under section 6651(a). See note 2, supra.↩
10. Certificates of Deposit Nos. 7806, 511 and B-326 were received by Audry Whitt from Elbert B. Whitt's estate.
11. Five of these parcels are referred to as Tract Nos. 2, 3, 4, 5, and 15 which respondent has also determined are includable in the Estate of Elbert B. Whitt.↩
12. Respondent bears the burden of prood on the issues of fraud, Rule 142(b), and also on the issue of the section 6651(a) additions to tax applicable to docket Nos. 13388-78 and 13389-78 raised for the first time in the Amendments to Answer filed on November 19, 1980. Rule 142(a).
13. This Court's formulation of the essential elements of a bona fide inter vivos gift is as follows: (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakeable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, inpraesenti; (4) the irrevocable transfer of the present legal title and of dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effective means of commanding the dominion of it; (6) acceptance of the gift by the donee; * * *. [Guest v. Commissioner,77 T.C. 9, 16 (1981) quoting Weil v. Commissioner,31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561↩ (5th Cir. 1936)]
14. We have not been presented with any evidence as to whether the $3,000 paid by Alton constituted the fair market value of the tract in 1952. However, because Elbert Whitt's 1952 taxable year is not in issue here, we need not determine whether the transfer constituted a part sale/part gift in that year which required the payment of gift taxes.↩
15. Although Alton testified that he did not take "possession" of Tract No. 1 because of its distance from his farm, we believe his further testimony as to allowing his brothers to farm the tract, his cutting of timber on it and his receipt of a right of way check indicates that he did not understand the legal significance of his use of the term "possession."↩
16. The Alabama recordation statute, Ala.Code sec. 35-4-90(a) (1975), states in relevant part: All conveyances of real property * * * are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.
17. Mahlon was unable to do much farming himself because he had lost a leg and three ribs serving in the Navy during World War II.↩
18. Our comments in Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947) are worth repeating here.
Petitioner has not established the factual allegations in its petition which are material and essential. Respondent was under no obligation to introduce evidence to rebut a fact alleged but not proven by petitioner. [Citation omitted] The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable.
19. The total fair market value of the tracts which we have determined are includable in the Estate of Elbert B. Whitt under section 2033 is $180,000.↩
20. Respondent determined that if we find that all 18 tracts of land were completed gifts in 1963 and 1964, the years the deeds were recorded, then the total value of the gifts made in those years was $77,616.16 and $170,431.56, respectively. Because we have found that Tract Nos. 1, 6, 7, 12, 13 and 16 were completed gifts in those years we need concern ourselves only with that portion of the valuation allocable to those six tracts.↩
21. Petitioner (docket No. 5422-79) is entitled to two annual exclusions of $3,000 for 1963 and three annual exclusions for 1964. Section 2503(b). Annual exclusions for Elbert Whitt's wife may not be claimed because her consent was not signified and cannot now be signified. Section 25.2513-2(b)(2) and (d), Gift Tax Regs.↩
22. The appraisal was made during respondent's initial investigation of the estate, prior to the filing of the estate tax return.↩
23. Petitioner attempts to discredit respondent's appraisal in that the appraiser observed the subject tracts of land from adjoining roads rather than by actuall walking the land. (Apparently the appraiser was advised by respondent not to actually go on the land.) Although a better view of the land could have been obtained by conducting a thorough on-site inspection, we are unconvinced that the appraisal lacks probative value. Moreover, because petitioner has failed to introduce any evidence to overcome the presumption of correctness of respondent's determination, we need not concern ourselves with the merits of respondent's supporting evidence.↩
24. The parties have agreed that the petitioners in all three consolidated cases are entitled to a deduction for reasonable attorney fees and other expenses in connection with litigating their cases in this Court. Section 20.2053-3(c), Estate Tax Regs.↩
25. SEC. 7203. WILLFUL FAILURE TO FILE RETURN, SUPPLY INFORMATION, OR PAY TAX. Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned no more than 1 year, or both, together with the costs of prosecution.
26. Petitioners only claim a total deduction of $10,000 for the fees allocable to the Estates. Respondent apparently does not contest the reasonableness of the fees.↩
27. See also Magill v. Commissioner,T.C. Memo. 1982-148↩.
28. Sec. 20.2053-3.Deduction for Expenses of Administering Estate. (a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses. * * *↩
29. Although the statute uses the term "trust" the Supreme Court of Alabama has held that the "administration of an estate in any court having jurisdiction is the administration of a trust as [described in section 34-3-60] * * *. An administrator or executor is a trustee, and his administration of the estate of a decedent is that of a trust * * *." Keith & Wilkinson v. Forsythe,227 Ala. 555, 151 So. 60, 61↩ (1933).
30. We find the authority cited by respondent as controlling, Grace v. Solomon,241 Ala. 452, 3 So.2d 3↩ (1941), inapposite in that the Alabama statute interpreted therein is not the one that concerns us here.
31. We note that counsel allocated $3,000 of the total $13,000 fee as services to Willard Whitt personally. This portion of the fee is not being claimed as a deduction. Respondent draws no distinction between expenses incurred by Willard and Loyd Whitt on the basis that a plea of nolo contendere was entered against the former whereas all charges against the latter were dismissed.
In the context of section 162(a) and 212(3), respondent's argument that legal expenses incurred in connection with the defense of criminal tax charges are "personal" has been soundly rejected.In Commissioner of Internal Revenue v. Shapiro,278 F.2d 556, 560 (7th Cir. 1960), the Court concluded that there is no essential difference between legal expenses arising in civil and criminal tax cases. Noting that deductions are granted freely for legal expenses arising in contesting civil tax suits, it is proper that a deduction is allowable for similar expenses in criminal suits. Both instances basically involve the "determination" of tax liability. * * * It logically follows that reasonable legal expenses incident to the determination of income tax liability--whether the litigation be civil or criminal--are deductible expenses. * * * Moreover, the United States Supreme Court in Commissioner of Internal Revenue v. Tellier,383 U.S. 687 (1966), held that no public policy is offended by permitting a deduction under section 162(a) for attorney fees incurred in the unsuccessful defense of criminal charges in connection with a securities business. We have considered the recent case of Jack's Maintenance Contractors, Inc. v. Commissioner,↩     F.2d     (5th Cir., filed April 18, 1983), rev'g. a memorandum opinion of this Court, wherein the U.S. Court of Appeals for the Fifth Circuit (the court to which an appeal in this case would lie) held that the corporation's payment of legal fees incurred in connection with criminal tax litigation arising out of the personal income tax returns of its sole shareholder and his wife was a constructive dividend and not an ordinary and necessary business expense of the corporation within the meaning of section 162. The instant case is clearly distinguishable both on the basis of the applicable code section involved and the fact that the legal fees in issue here relate to the investigation and determination of the Estates' own tax liabilities, not the personal tax liability of the administrators and executor.
32. We note that Elbert Whitt's 1967 and 1968 returns bear his name on the signature line. Section 6064 provides that the "fact that an individual's name is signed to a return * * * shall be prima facie evidence for all purposes that the return * * * was actually signed by him." No evidence was introduced to indicate that the returns were not signed by him. See United States v. Cashio,420 F.2d 1132↩ (5th Cir. 1969).
33. Elbert Whitt's 1967 and 1968 Federal income tax returns both contain a Schedule F which reflects farm losses for those years.↩